UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MEGAN K. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-CV-445-HBG |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 13-1] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15]. Megan K. Wright ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I.    Procedural History**

On March 22, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began September 1, 1996. [Tr. 41, 160-61]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

[Tr.134-36]. On December 17, 2013, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 25-40]. On May 9, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 9-24]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on October 2, 2015 seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner and whether the ALJ's findings are supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th

Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)).

## III. ANALYSIS

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff alleges four errors committed by the ALJ. First, the Plaintiff asserts that the ALJ erred at step two in finding that the Plaintiff's medically determinable impairments were non-severe. [Doc. 13-1 at 5]. Second, the Plaintiff submits that the ALJ did not properly weigh the medical opinions of her treating psychiatrist, Kenneth Jobson, M.D. [*Id.* at 6-7].[2] Next, the Plaintiff contends that substantial evidence fails to support the ALJ's credibility finding. [*Id.*

---

[2] The Court notes that the record includes three opinions from Dr. Jobson: a letter and medical source statement dated May 8, 2012 [Tr. 523], and two "Limitation Related to Psychiatric State" form opinions dated January 8, 2013 [Tr. 750-51] and December 11, 2013 [Tr. 777-80]. The Plaintiff's brief summarizes the December 11, 2013 opinion but then discusses findings made by the ALJ as to the May 8, 2012 opinion. [Doc. 13-1 at 6-7]. Because the Plaintiff's brief lacks clarity as to which opinion was improperly weighed by the ALJ, the Court will undertake a review of all three opinions.

4

at 8-9]. Finally, the Plaintiff maintains that the ALJ erred in failing to obtain evidence from a vocational expert. [*Id.* at 7-8]. The Court will address each alleged error in turn.

A. **Step-Two Finding**

The Plaintiff argues that it was error for the ALJ to find at step two that the Plaintiff did not have a severe impairment.

At step two, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step two has been described as "a *de minimis* hurdle" in that an impairment will be considered nonsevere "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

Here, the ALJ found that the Plaintiff's bipolar disorder, anxiety disorder, and obesity were medically determinable impairments but were non-severe. [Tr. 14]. In making this finding, the ALJ determined that the evidence of record demonstrated that the Plaintiff's impairments, both singularly and in combination, did not significantly limit her ability to perform basic work-related activities for 12 consecutive months. [*Id.*]. The ALJ, therefore, ended the sequential evaluation at step two.

The Court finds that substantial evidence supports the ALJ's determination that the Plaintiff did not have a severe impairment. In reaching this conclusion, the Court notes the ALJ's observation as to the lack of medical evidence during the relevant time period in question. The ALJ noted that the relevant time period was from September 1, 1996, the Plaintiff's alleged onset date, through December 31, 2000, the Plaintiff's last date insured. [Tr. 16]. "In order to establish

5

entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *see* Soc. Sec. Rul. 83-20, 1983 WL 31249 at *3 (Jan. 1, 1983) ("A [T]itle II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)."). Here, the ALJ observed that the Plaintiff provided little evidence of mental health or medical treatment before her date last insured. [Tr. 16]. Indeed, the Plaintiff only cites to medical bills that reflect she received Electroconvulsive Therapy for two weeks between April 1997 and May 1997, and an Explanation of Benefits ("EOB") statements from BlueCross BlueShield that reflect treatment was received from a Kathleen Sales, M.D., between October 1996 and January 1997. [Doc. 13-1 at 5 (citing Tr. 227-36, 238-53, )]. This evidence was presented for the first time in connection with the Plaintiff's request for review by the Appeals Council. [Tr. 4].

The Court is prohibited from considering this evidence in its substantive review of the ALJ's decision. Our appellate court has made clear "that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits," as is the case here [Tr. 1-4], a court "cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). However, the Court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* (citation omitted). This is referred to as a "sentence six remand." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The Plaintiff, however, has made no showing that this evidence is new, material, or that good cause exists.

6

Regardless, it is the claimant's responsibility to submit sufficient evidence that allows the Commissioner to make a determination as to the nature and severity of any impairments, whether the duration requirement has been met, and the residual functional capacity to do work-related physical and mental activities. 20 C.F.R. § 404.1512(A)(2). Medical bills and EOBs fail to provide insight into any of these matters.

Furthermore, the remaining medical records and treatment notes that were submitted by the Plaintiff post-date her date last insured by at least two years. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004). While the ALJ nonetheless considered the evidence of record, including medical opinions from the Plaintiff's treating psychiatrist which will be addressed more fully below, the findings and opinions rendered throughout the record do not reflect on the nature and severity of the Plaintiff's impairments as they were during the period under review.

Accordingly, the Court finds that substantial evidence supports the ALJ's determination that the Plaintiff does not have a severe impairment, and the Plaintiff's argument to the contrary are unavailing.

### B. Treating Psychiatrist Kenneth O. Jobson, M.D.

The Plaintiff also argues that the ALJ did not properly weigh the opinions of Dr. Jobson.

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be

given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion.  Id.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision.  Id. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).  Nonetheless, the ultimate decision of disability rests with the ALJ.  See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

Dr. Jobson began treating the Plaintiff in 2003 for Bipolar Disorder and depression.  The record includes three opinions from Dr. Jobson: a letter and medical source statement dated May 8, 2012 [Tr. 523], and two "Limitation Related to Psychiatric State" form opinions dated January 8, 2013 [Tr. 750-51] and December 11, 2013 [Tr. 777-80].  The ALJ assigned "little weight" to each opinion.  [Tr. 17-18].  The Court finds that substantial evidence supports the ALJ's conclusion for several reasons.

First, as to the May 8, 2012 letter, Dr. Jobson explained that based on his treatment with the Plaintiff for Bipolar Disorder with ongoing depression with psychosis and auditory hallucinations, the Plaintiff was "fully and totally disabled" despite treatment efforts.  [Tr. 523]. The ALJ properly observed [Tr. 17] that a finding that the Plaintiff was "fully and totally disabled"

8

was not a medical opinion, but an issue reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(3) (opinions on whether a claimant is disabled "will not be given any special significance" because whether an individual meets the statutory definition of disability is an issue strictly reserved for the Commissioner).

Second, Dr. Jobson opined both in his May 8, 2012 medical source statement as well as his January 8, 2013 and December 11, 2013 "Limitation Related to Psychiatric State" form opinions that the Plaintiff had moderate to marked or severe limitations in all work related areas, including memory, concentration, work attendance, and social skills. [Tr. 523-25, 750-51, 777-80]. The Court finds that Dr. Jobson failed to offer any support for the conclusions reached.

As to the May 8, 2012 opinion, the ALJ observed that while Dr. Jobson had enjoyed a nine-year treatment relationship with the Plaintiff, Dr. Jobson began treating the Plaintiff three years after the Plaintiff's last date insured. [Tr. 17]. Thus, the ALJ properly concluded that the opinion was entitled to little weight because "it was for a period after the date last insured." [*Id.*]. Indeed, post-dated evidence is relevant if it "relate[s] back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) (citing King v. Sec'y of Health and Human Servs., 896 F.2d 204, 205-06 (6th Cir. 1990)).

With regard to the January 8, 2013 form opinion, the ALJ assigned it little weight "because there were no adequate explanations or objective clinical signs, diagnostic studies, or laboratory findings to support the opinion beyond the check marks placed on a form devised by the claimant's representative." [Tr. 18]. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings . . . .'" *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (quoting

9

*Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)). Indeed, Dr. Jobson provides no explanation for any of the limitations assessed, and the Plaintiff has not cited to any evidence within the record to support Dr. Jobson's extreme limitations.

Dr. Jobson's second form opinion, dated December 11, 2013, fares no better as Dr. Jobson opined, without explanation, that the onset of the Plaintiff's impairments and limitations began in 1996. [Tr. 780]. The ALJ properly declined to give this finding any deference because "there were no treatment notes or objective evidence of any treatment [with Dr. Jobson] before 2003." [Tr. 18]. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (finding it proper to reject a treating physician's opinion as speculative regarding the claimant's symptoms for the two-year period before the physician first treated him).

The Plaintiff contends that Dr. Jobson's opinions were entitled to greater deference because he treated the Plaintiff for 10 years and was thoroughly familiar with the Plaintiff's treatment prior to 2003. [Doc. 13-1 at 7]. The Plaintiff, however, cites no supporting evidence within the record that would indicate that Dr. Jobson was familiar with the Plaintiff's condition or treatment with other medical sources prior to 2003. Dr. Jobson's opinions are likewise silent as to the clinical or laboratory diagnostic techniques, examination findings, or other objective evidence that would support a finding that the Plaintiff's impairments have been disabling since 1996.

Accordingly, the Court finds the Plaintiff's allegation of error without merit.

### C. Credibility

The Plaintiff additionally contests the ALJ's credibility finding.

An ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." <u>Walters</u>, 127 F.3d at 531. However, the ALJ's finding must be supported by

10

substantial evidence. Id. Nonetheless, "[i]t is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence" and "testimony concerning . . . symptoms and limitations [that] is not supported by the evidence of record and is deemed not fully credible." *Collins v. Comm'r. of Soc. Sec.*, 357 F. App'x 663, 669-70 (6th Cir. 2009).

The Plaintiff argues that the ALJ should have found the Plaintiff's subjective allegations more credible based upon the opinion of consultative examiner Brian Humphrey's Psy.D. [Doc. 13-1 at 9]. Dr. Humphrey opined that the level of impairment experienced by the Plaintiff was dependent on her mood as her depression had the effect of making her nonfunctional. [Tr. 536-37]. For example, when the Plaintiff's depression was severe, she became moderately limited in her ability to remember and markedly limited in her ability to concentrate and persist, interact appropriately with others, and adapt to change. [Tr. 536]. But the ALJ gave Dr. Humphrey's opinion little weight because it appeared to rely only on the Plaintiff's subjective limitations and not examining findings or other medical evidence of record. [Tr. 18]. The Plaintiff has noted cited any error with regard to the ALJ's treatment of Dr. Humphrey's opinion, and the Court finds none. Therefore, Dr. Humphrey's opinion does not undermine the ALJ's credibility assessment.

Moreover, the ALJ provided a number of appropriate reasons for finding the Plaintiff only partially credible. Specifically, the ALJ discounted the Plaintiff's credibility because the level of treatment sought by the Plaintiff was disproportionate to her disabling allegations, the record consisted of minimal treatment prior to her date last insured, there was little evidence that she was prescribed any medication designed to treat her psychiatric or mental symptoms, and the record did not support the Plaintiff's testimony that she experienced adverse side effects with her medication prior to her date last insured. The Court observes that "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports,

11

claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

Therefore, the Plaintiff's allegation of error is not well-taken.

### D. Vocational Expert

Finally, the Court finds no merit in the Plaintiff's last allegation of error. In this regard, the Plaintiff asserts that the ALJ erred by failing "to obtain any evidence from a vocational expert to clarify effects of the assessed limitations on the claimant's occupational base with respect to past relevant work or any other work in the national economy." [Doc. 13-1 at 7-8]. The purpose of a vocational expert, however, is to "[testify] on the basis of the claimant's 'residual functional capacity and . . . age, education, and work experience' and assess whether the claimant 'can make an adjustment to other work.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir.2004) (quoting 20 C.F.R. § 416.920(a)(4)(v)). Here, the ALJ ended the sequential evaluation at step two when she found that the Plaintiff did not have a severe impairment. Therefore, the ALJ did not make a residual functional capacity determination or reach step five of the sequential evaluation which deals with whether other work exists in the national economy that a claimant is capable of performing. Accordingly, the testimony of a vocational expert was not necessary in this case.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 13**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 14**] is **GRANTED**. The decision of the Commissioner will be **AFFIRMED**, and the Clerk of Court will be directed to **CLOSE** this case.

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge

13